**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | | |
|---|---|---|
| JACK COCCHIARELLA, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | CIVL CASE NO.:  22-cv-00367 |
| | ) | |
| NATHAN KIM, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

---

**PLAINTIFFS' MOTION FOR A PRELIMINARY AND PERMANENT**
**INJUNCTION AND REQUEST FOR EXPEDITED HEARING**

---

Plaintiffs Jack Cocchiarella ("*Jack*") and Politically Correct Strategies LLC ("*PCS*," together with Jack, "*Plaintiffs*") respectfully request that this Court enter an order granting them a preliminary and permanent injunction against Defendant Nathan Kim ("*Kim*"), (1) enjoining and restraining Kim from creating, publishing, commenting on, or discussing any the False Statements about Jack on any internet social media platform and/or any and all other public or private forum known or unknown to Jack or PCS, including, but not limited to, Twitter, Reddit, and Fizz; (2) mandating that Kim immediately and permanently post a retraction of the False Statements on any internet social media platform and/or any and all other public or private forum known or unknown to Jack or PCS, including, but not limited to, Twitter, Reddit, and Fizz, including an affirmative statement that Kim is fully aware the False Statements are untrue, fabricated, and were falsely made by Kim to cause harm to and damage the reputation of Jack; and (3) following the posting of a permanent retraction of the False Statement as referenced above, mandating that Kim immediately delete and destroy all False Statements on any internet social media platform and/or any and all other public or private forum known or unknown to Jack or PCS, including, but not limited to, Twitter, Reddit, and Fizz. The reasons for this Motion are stated more fully in the

accompanying Memorandum of Law in Support, which is incorporated herein by reference.

Plaintiffs request an expedited hearing on this motion.

Respectfully Submitted,

**CULLEN COLLIMORE SHIRLEY PLLC**

*/s/ Kevin Collimore*
KEVIN G. COLLIMORE (NH Bar No. 11259)
37 Technology Way
Suite 3W2
Nashua, NH  03060
Telephone: 603.881.5500
Email: kcollimore@cullencollimore.com

-and-

**KOHRMAN JACKSON & KRANTZ LLP**

*/s/ Susan C. Stone*
SUSAN C. STONE (OH 64445) (*pro hac vice pending*)
KRISTINA W. SUPLER (OH 80609) (*pro hac vice pending*)
NATHAN F. STUDENY (OH 77864) (*pro hac vice pending*)
1375 East Ninth Street, 29th Floor
Cleveland, Ohio 44114-1793
Telephone: (216) 696-8700
Facsimile: (216) 621-6536
Email: scs@kjk.com; kws@kjk.com; nfs@kjk.com

*Counsel for Plaintiffs Jack Cocchiarella and*
*Politically Correct Strategies LLC*

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION**

Plaintiffs respectfully request that this Court grant them a preliminary injunction prohibiting Defendant Nathan Kim ("***Kim***") from posting, and/or encouraging others to post, about Jack on social media of any kind, and mandating that Kim permanently post a retraction statement to all his associated social media pages, including, but not limited to, Twitter, Reddit, and Fizz. Plaintiffs request an expedited hearing on this motion.

The insurmountable damage caused to Jack by the conduct of Kim must further be corrected by Kim's full retraction of the False Statements and an affirmative statement by Kim that the False Statements are untrue, fabricated, and were falsely made by Kim to damage the reputation of Jack. Only with this remedy will Jack finally be able to begin putting the pieces of his life back together that has been shattered directly as a result of Kim.

## I.      INTRODUCTION

This case arises from a concerted and concentrated personal crusade against Jack by Kim beginning in or around November of 2021, carried out via the social media websites Twitter, Reddit, Fizz, and Librex. Since that time and continuing to the present, Kim defamed and continues to defame Jack by publishing false statements to Twitter asserting that Jack is a rapist and that he has sexually assaulted women on Dartmouth College's campus ("***False Statements***").

None of the False Statements have any basis in fact and they are all verifiably false. By publishing, and continuing to publish, False Statements, Kim has defamed Jack, intentionally inflicted emotional distress upon him, cast him in a false light to the public, and tortiously interfered with Jack's economic relationships. Jack is likely to succeed on the merits of his claims against Kim, and his and PCS' reputations will be irreparably harmed without the injunctive relief

requested herein. Kim's crusade has escalated so far that third parties are becoming involved and

have started to threaten physical violence against Jack. *See* Compl. at ¶¶ 3, 50.

## II.    FACTUAL BACKGROUND

Jack incorporates the facts as described in his Complaint as if fully restated herein.

### A.    A Video of Jack Goes Viral Online, Spurring Defamatory Librex Posts.

Jack is currently an undergraduate sophomore who recently transferred from Dartmouth

College to Columbia University because of the damage to his reputation, ridicule, ostracization,

and isolation caused by Kim's defamatory crusade against him on Twitter and elsewhere online.

On or about October 24, 2021, Jack attended a controversial political event on Dartmouth's

campus hosted by the Dartmouth College Republicans featuring Congressman Madison Cawthorn.

During the question-and-answer portion of the event, Jack confronted Congressman Cawthorn

about his views on the 2020 presidential election and the disturbance at the U.S. Capitol on January

6, 2021. Jack posted a video of his encounter with Congressman Cawthorn to his Twitter account,

@JDCocchiarella, which was subsequently picked up and circulated by major news media outlets.

Immediately after the video of Jack and Congressman Cawthorn went viral, disparaging

posts about Jack began appearing on the now-defunct, anonymous Ivy League social media

platform, Librex.[1] The posts on Librex falsely claimed that Jack was a rapist, that he raped a girl

while she was unconscious, and that he had sexually assaulted eight women on Dartmouth's

campus during the fall of his freshman year.

Librex was shut down by its founder and all of its data has been destroyed, so the identity

of the person(s) making the false claims against Jack are unknown and are incapable of being

---

[1] *See* White, T. *Abrupt shutdown of Librex prompts mixed reactions from students*, THE DARTMOUTH (Feb. 25, 2022) available at: https://www.thedartmouth.com/article/2022/02/abrupt-shutdown-of-librex-prompts-mixed-reactions-from-students.

discovered. On information and belief, the false Librex posts only surfaced because the video with Congressman Cawthorn went viral and Jack's Democratic political cachet increased.

Contrary to the vulgar, outright false, and disparaging statements made in the anonymous Librex posts, Jack has never raped or sexually assaulted anyone, and he has never been criminally investigated, indicted, or charged for any sexual misconduct or sexual assault crime, including rape, nor has he ever been the subject of a Title IX, civil, or other investigation, or lawsuit involving sexual misconduct or sexual assault, including rape.

B.      **Nathan Kim Begins Publishing the False Statements.**

On or about November 17, 2021, Defendant Kim, under the Twitter usernames @stoprapists101[2] and @aplopl3x, began publishing False Statements (from his own accounts tagging Jack, and in reply to Jack's and other's tweets), that were thereby attached to Jack's account and visible to any Twitter user.

Throughout November and December of 2021 and up to March of 2022, Kim published False Statements including the following:[3]

- that's cool but when are you going to address the fact that you have multiple rape allegations against you and that they were so credible you were banned from the dartmouth democrats and the fraternities around campus?
  #BelieveAllWomen – Nov. 17, 2021.

- but around campus he's already been kicked out of the college democrats and the frats and is known as a rapist after multiple girls accused him of sexual assault – Nov. 19, 2021 (replying to Jack and another twitter user)

---

[2] Kim recently changed the name of his @stoprapists101 account to @rxndomstudent. There is a risk that Kim will change other account names and that information will be lost.

[3] Kim's tweets are copied verbatim throughout this Motion and accordingly may contain numerous typographical and grammatical errors.

- that's cool but when are you gonna stop raping my classmates at Dartmouth – Dec. 4, 2021

- this man has multiple rape allegations against him that have been corroborated by multiple witnesses, and he's been banned from many frats and the dartmouth democrats. why do you think he's a good role model or worth supporting? – Dec. 4, 2021

- it's sad that so many people are supporting a rapist :( – Dec. 4, 2021

- that's cool but you already posted this clip and if you would stop raping my classmates that would be nice kthxbai – Dec. 4, 2021

- ok that's cool but when are you gonna stop raping my classmates – Dec. 5, 2021

- that's cool if the GOP implodes, but please stop raping my classmates – Dec. 6, 2021

- maybe people would take you seriously if you stopped raping unconscious girls – Dec. 14, 2021

- okay but when will you address the fact that you have been raping unconscious girls. these are my classmates and i will NOT let you get away with this shit. this is unacceptable. may God have mercy on your broken soul. – Dec. 16, 2021

- you want to defend rapists? that's fine, be that way, but this guy has been raping my classmates and should be punished for this. unlike you i don't defend rapists based on political affiliation – Dec. 17, 2021

- It appears you don't know what consent is, when you raped 6 girls on our campus in one term and then called the allegations false and blamed it on the Dartmouth Republicans. Stop pretending like you care about women's rights. – Mar. 12, 2022

True and accurate copies of these and other subsequent False Statements that Kim continues to publish to the present are replicated in the Complaint and attached thereto as Exhibits A (@stoprapists101) and B (@aplopl3x). Kim resumed his campaign against Jack in July of 2022 by publishing similar False Statements to his @stoprapists101 Twitter account and his @aplopl3x Twitter account and continues to publish False Statements on those accounts frequently.

In addition to directing his publications to Twitter at large, Kim expressly directed his publications at Dartmouth College, Columbia University, and Jack's political employers and affiliates by replying to tweets published by their official and entity accounts and tagging or referring to their Twitter accounts in his own publications. Further, Kim's tweets are actively causing third parties to become involved in his crusade against Jack. Those third parties have started to threaten Jack with physical violence and death, as recently as September 15, 2022. *See* Compl. at ¶¶ 3, 50. This is of particular concern because Jack's location at Columbia has become known as a result of Kim's campaign against him.

## III.   LAW & ARGUMENT

### A.   Jack Has a Strong Likelihood of Success on The Merits.

As shown below, Jack can satisfy each of the elements required for a preliminary injunction. Accordingly, this Court should grant Plaintiffs' Motion and prohibit Kim from posting, and/or encouraging others to post, any content about Jack and should mandate that Kim post a retraction statement retracting and acknowledging the falsity of the False Statements.

Seeking a mandatory injunction, which requires affirmative action by the non-moving party in advance of trial, is subject to the "same four-factor test" as seeking a prohibitory preliminary injunction. *Café Indigo, LLC v. Pearl River Pastry, LLC*, 2020 DNH 148 at \*4. Because a mandatory injunction "alters rather than preserves the status quo, it 'normally should be granted only in those circumstances when the exigencies of the situation demand such relief.'" *Id.* (citing *Braintree Labs., Inc. v. Citigroup Glob. Mkts. Inc.*, 622 F.3d 36, 41 (1st Cir. 2010)). The exigencies of the situation at bar undoubtedly demand such relief, especially given the recent and ongoing threats of violence against Jack.

The moving party's entitlement to mandatory injunctive relief turns on the "familiar four factors:" (1) the likelihood that the movant will succeed on the merits; (2) the possibility that, without an injunction, the movant will suffer irreparable harm; (3) the balance of relevant hardships as between the parties; and (4) the effect of the court's ruling on the public interest. *Id.* at *3-4. As demonstrated below, it is substantially likely that Jack will succeed on the merits of his claims against Kim for defamation, intentional infliction of emotional distress, false light invasion of privacy, and tortious interference with economic relationships. All of the remaining factors for injunctive relief also weigh in favor of granting Plaintiffs' Motion.

### 1.    Defamation

In defining the elements of defamation, New Hampshire courts look to the Restatement (Second) of Torts. *Scottsdale Capital Advisors Corp. v. Deal, LLC*, 887 F.3d 17, 21 (1st Cir. 2018) (citing *Duchesnaye v. Munro Enters., Inc.*, 125 N.H. 244, 480 A.2d 123, 127-28 (N.H. 1984)). The elements of defamation as enumerated in the Restatement are: (a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting to at least negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Id*. (citing Restat. 2d of Torts, § 558).

Regarding the publisher's level of fault, a private figure asserting a defamation claim must show that the defendant was negligent in publishing the statement, meaning the defendant published the false and defamatory statement without exercising reasonable care as to whether it is true or false. *Sanguedolce v. Wolfe*, 164 N.H. 644, 645-46 (2013). A public figure advancing a defamation claim must show by clear and convincing evidence that the defendant acted with actual

malice: that is, with knowledge of the statement's falsity or reckless disregard for its truth. *N.Y. Times v. Sullivan*, 376 U.S. 254, 279-80 (1964).

Finally, one who publishes a false statement that imputes to another conduct constituting a criminal offense is subject to liability to the other without proof of special harm if the offense imputed is of a type which, if committed in the place of publication, would be (a) punishable by imprisonment in a state or federal institution, or (b) regarded by public opinion as involving moral turpitude. Restat. 2d of Torts, § 571. Based on the tweets cited herein and in the Complaint, no proof of special harm will be necessary in this matter.

a.     <u>Jack Will Likely Succeed on the Merits Based Upon an Ordinary Negligence Standard</u>

In addition to those listed above, Kim published the following False Statements of and concerning Jack, including: "there were 8 different girls who voiced concerns of what Jack did to them;" "the fact that you have been raping unconscious girls;" "this guy has been raping my classmates;" "when are you gonna stop raping my classmates;" "you have multiple rape allegations against you and that they were so credible that you were banned from the dartmouth democrats and the fraternities around campus;" "you raped 6 girls on our campus in one term;" "maybe people would take you seriously if you stopped raping unconscious girls;" "please stop raping my classmates;" "it's sad that so many people are supporting a rapist;" "if you would stop raping my classmates that would be nice;" "this man has multiple rape allegations against him that have been corroborated by multiple witnesses;" "when are you gonna stop raping my classmates at Dartmouth;" and "he's already been kicked out of the college democrats and the frats and is known as a rapist after multiple girls accused him of sexual assault."

The False Kim Statements have no basis in fact and are false and defamatory. Jack has never raped or sexually assaulted anyone, and he has never been criminally investigated, indicted,

9

or charged for any sexual misconduct or sexual assault crime, including rape, nor has he ever been the subject of a Title IX or civil complaint involving sexual misconduct or sexual assault, including rape.

Second, Kim published the False Statements to Twitter, tagging Jack in the tweets and replying to and retweeting highly-followed political figures and institutions, making them visible to thousands of third parties. Unquestionably, the False Statements were published to third parties without any privilege.

Third, Kim's publications are subject to a negligence standard because Jack is a private figure student. Kim did not exercise reasonable care as to whether the False Statements about Jack were true or false. Kim based the False Statements on anonymous, unverifiable Librex posts and an article published based on those same anonymous posts. Because the posts on Librex and the article based upon them were anonymous, it is not possible to verify their truth or falsity without discovery. Accordingly, Kim was negligent in publishing the False Statements. *Sanguedolce*, 164 N.H. 644 at 645-46.

Finally, the False Statements are actionable irrespective of special harm. Kim published statements accusing Jack of sexual assault, criminal assault, rape, and rape of an unconscious woman, which are crimes defined by statute, punishable by imprisonment, and regarded by public opinion as involving moral turpitude in New Hampshire, where the statements were published. *See* Restat. 2d of Torts, § 571. For Jack to be a "rapist," as asserted by Kim, he would have to have been charged and convicted of the crime of aggravated felonious sexual assault as defined by N.H. Rev. Stat. § 632-A:2. No such charge or conviction exists.

By satisfying all of these elements, Jack is substantially likely to succeed on the merits of his defamation claim against Kim. *Scottsdale Capital Advisors Corp.*, 887 F.3d at 21; *Lemelson*, 903 F.3d at 23-24.

> b.      Jack Will Likely Succeed on the Merits, Even if He is Deemed a Public Figure

Even if Jack is found to be a public figure, he is substantially likely to succeed on the merits of his defamation claim. If Jack is a public figure, the third element of the defamation tort changes from a negligence standard to an "actual malice" standard, and the other three elements remain the same. *N.Y. Times*, 376 U.S. at 279-80. As indicated above, the elements of: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; and (4) actionability of the statement irrespective of special harm are all met.

The remaining element, "actual malice," is a "wholly subjective" standard, so a mere deviation from reasonably prudent conduct will not suffice. *Levesque v. Doocy*, 560 F.3d 82, 90 (1st Cir. 2009). To satisfy the actual malice requirement, a plaintiff must point to "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication," or "actually had a high degree of awareness of probable falsity." *Lemelson v. Bloomberg L.P.*, 903 F.3d 19, 24 (1st Cir. 2018) (citing *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *Harte-Hanks Comm. v. Connaughton*, 491 U.S. 657, 688 (1989)). Objective facts that support an inference of the existence of actual malice include indications of negligence, motive, and intent. *Bose Corp. v. Consumers Union*, 692 F.2d 189, 196 (1st Cir. 1982).

Here, Kim entertained serious doubt as to the truth of his publications and actually had a high degree of awareness of their probable falsity as indicated by the following published False Statements: "because of lack of hard evidence;" "nor do I think the article provides any evidence;" "there absolutely were 8 cases filed against him. the title IX investigation was stopped most likely

11

due to admin's request;" "jack is an adult with 8 criminal assault claims against him;" "there is no question Jack committed these crimes, or whatever you want to call them;" "i understand that it is not unheard of for females to lie about this;" and "the majority of these incidents happened in the first two weeks of school." By acknowledging a "lack of hard evidence" and making false assertions of fact that are readily publicly verifiable like the alleged criminal assault claims, Kim published his False Statements with actual malice. *Lemelson*, 903 F.3d at 24; *St. Amant*, 390 U.S. at 731; *Harte-Hanks Comm.*, 491 U.S. at 688. Accordingly, Plaintiffs are substantially likely to succeed on the merits of their defamation claim even if Jack is found to be a public figure.

### 2. Intentional Infliction of Emotional Distress

In order to make out a claim for intentional infliction of emotional distress, a plaintiff must allege that the defendant intentionally or recklessly caused severe emotional distress to the plaintiff by extreme and outrageous conduct. *Tessier v. Rockefeller*, 162 N.H. 324, 341, 33 A.3d 1118, 1131 (2011) (citing *Morancy v. Morancy*, 134 N.H. 493, 496, 593 A.2d 1158 (1991)). In determining whether conduct is extreme and outrageous, it is not enough that a person has acted with an intent which is tortious or even criminal, or that he intended to inflict emotional distress, or even that his conduct has been characterized by malice. *Id.* (citing *Mikell v. Sch. Admin. Unit #33*, 158 N.H. 723, 729, 972 A.2d 1050 (2009)). Rather, liability has been found only where the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Mikell*, 158 N.H. at 729.

False accusations that anyone is a rapist and someone who sexually assaults women are outrageous, extreme, and atrocious and utterly intolerable to anyone in civilized society. *Hungerford v. Jones*, 988 F. Supp. 22, 27 (D.N.H. 1997); *Mikell*, 158 N.H. at 729. Finally, by

directing his False Statements to both Dartmouth and Columbia, Kim intended to draw attention to Jack and cause him emotional distress and anxiety over his wellbeing on campus. Accordingly, it is substantially likely that Jack will succeed on the merits of his claim against Kim for intentional infliction of emotional distress. *Tessier*, 162 N.H. at 341.

Here, Kim intentionally caused Jack severe emotional distress by his extreme and outrageous conduct in falsely asserting that Jack rapes and sexually assaults women and calling upon the Columbia student body to be on their guard when Jack is on campus. The social isolation and alienation at Dartmouth became so pervasive as a result of Kim's campaign against him that nobody would talk to or associate with Jack and he was forced to transfer schools. Further, and as a result of the threats of physical violence against him that arose only after Kim's ongoing publication of False Statements about him, Jack feels as though there is a "target on his back" around Columbia's campus and is constantly nervous about even going outside.

Despite transferring to Columbia, Jack continues to suffer severe emotional distress as a result of Kim's publication of the False Statements and targeted personal crusade against Jack at Columbia, including anxiety, loss of sleep, and fear for his personal safety on campus. Kim's crusade against him has caused Jack to lose the respect of his peers, the trust of his friends, and the value of the professional organizations with which he has striven to attain membership for years. Jack's tireless efforts to build professional connections and the emotional energy he has put into his friendships have been rendered all for naught by Kim's baseless, intentional, and ongoing campaign against him. Close friends and trusted peers now believe Jack to be a criminal based on Kim's False Statements.

### 3.    False Light Invasion of Privacy

The New Hampshire Supreme Court has addressed the tort of false light invasion of privacy. *O'Neill v. Valley Reg'l Health Care, Inc.*, 2001 DNH 54. Defamation and false light are distinct torts, comprised of different elements. *Compare* Restatement (Second) of Torts, §§ 558, *et seq.* (1977) *with id.* § 652E. Thus, while a plaintiff may obtain only a single recovery for injuries stemming from an actionable publication, he or she can bring claims for both false light and defamation; those claims are neither identical nor mutually exclusive. *Howard v. Antilla*, 2001 DNH 45, 160 F. Supp. 2d 169, 173.

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. Restat. 2d of Torts, § 652E.

Here, asserting or implying that any reasonable person is a rapist and a person who sexually assaults women would be highly offensive to that person. Further, and as indicated above, Kim acted intentionally as to the falsity of his False Statements and the light in which they have placed Jack. Kim acted with reckless disregard for the falsity of the False Statements because he relied upon anonymous, unsupported Librex posts and a news article based on those same unsupported posts without any further investigation. Accordingly, Jack is substantially likely to succeed on the merits of his claim against Kim for false light invasion of privacy.

### 4.    Tortious Interference with Economic Relationships

Under New Hampshire law, a claim for tortious interference with an economic relationship requires proof that: (1) the plaintiff had an economic relationship with a third party; (2) the

defendant knew of this relationship; (3) the defendant intentionally and improperly interfered with this relationship; and (4) the plaintiff was damaged by such interference. *Beaulac v. All Sys. Satellite Distribs.*, No. 17-cv-162-JD, 2017 U.S. Dist. LEXIS 153896, at *5-6 (D.N.H. Sep. 21, 2017) (citing *Singer Asset Fin. Co., LLC v. Wyner*, 156 N.H. 468, 478, 937 A.2d 303 (2007)). Economic relationships include contractual relationships, business relationships, prospective contractual or business relationships, and other economic relationships or economic advantages, including employment. *Id.*

Here, Jack and PCS had employment and economic relationships with several politicians, of which Kim was aware. Jack also had a contractual relationship with Dartmouth College and currently has a contractual relationship with Columbia University, both of which Kim has targeted on Twitter and by other means.

Along with publishing the False Statements, Kim has called upon Jack's employers and business contacts to interfere with their relationships and urge the employers to sever their ties with Jack and PCS based on their False Statements. As a result, Jack has in fact lost many contracts with those employers. Kim has also demanded that Columbia answer with its rationale for permitting Jack to transfer to Columbia from Dartmouth, with the intent to make Columbia reconsider its grant of admission to Jack.

As the direct and proximate result of Kim's interference, Jack lost relationships with some of his employers and other business contacts. Additionally, the interference has made Jack notorious among the Columbia student body and has damaged his ability to receive an education and benefit from his economic relationship with Columbia. Jack is substantially likely to succeed on the merits of his claim against Kim for tortious interference with economic relationships.

15

**B.       Jack Will Suffer Irreparable Harm Absent Injunctive Relief.**

Unless this Court grants injunctive relief, Jack is certain to suffer irreparable harm. Jack

will be irreparably harmed if the court does not prohibit Kim from further publication and order

him to publish a retraction statement indicating that his publications were false and not based on

any facts. "Only a viable threat of serious harm which cannot be undone authorizes exercise of a

court's equitable power to enjoin before the merits are fully determined. A preliminary injunction

will not be issued simply to prevent a mere possibility of injury." *Id.* at \*19 (citing *Mass. Coal. of*

*Citizens with Disabilities v. Civil Def. Agency & Office of Emergency Preparedness*, 649 F.2d 71,

74 (1st Cir. 1981)). A showing of irreparable harm is "the essential prerequisite for equitable

relief." *Braintree Labs*, 622 F.3d at 41.

Here, the harm to Jack's reputation is not merely possible, it has already occurred and

continues to worsen. This injury cannot be undone by money damages and will only continue to

snowball as Kim is able to continue his crusade against Jack without retracting his previous

publications or being prohibited from further posting. Jack's educational, economic, and

professional opportunities will be lost without injunctive relief. The reputational harm to Jack is

undoubtedly a "serious harm which cannot be undone." *Mass. Coal*, 649 F.2d at 74.

Once a defamatory statement has been published, an individual's reputation is restored

only if those to whom the defamation was uttered are informed of the statement's falsity. Peled,

E., *Constitutionalizing Mandatory Retraction in Defamation Law*, 30 HASTINGS COMM. & ENT.

L.J. 33, 86 (2007) (quoting Note, *Vindication of the Reputation of a Public Official*, 80 HARV. L.

REV. 1730, 1739 (1967). As far as vindication of character or reputation is concerned, it stands to

reason that a full and frank retraction of the false charge, especially if published as widely and

substantially to the same readers as was the libel, is usually in fact a more complete redress than a

judgment for damages. Van Dam, L., *LONG LIVE THE LIE BILL!*, 41 U. MICH. J.L. REFORM 525, 533 (2008) (citing *Allen v. Pioneer-Press Co.*, 40 Minn. 117, 41 N.W. 936, 938 (1889)).

Without a retraction, Jack will be irreparably harmed by being rendered unemployable, unable to make friends at Columbia, and unable to transfer into another university without the False Statements following him. This second, "essential" factor of a preliminary prohibitory and mandatory injunction is also met. *Braintree Labs*, 622 F.3d at 41. Granting Plaintiffs the requested injunctive relief is the only way to keep their reputation and opportunities intact.

Additionally, a number of third party individuals have started to closely follow Kim's campaign against Jack and are threatening physical violence against him. Jack's location at Columbia is known because of Kim's crusade against him, and the threats of violence against Jack are unquestionably a "serious harm which cannot be undone." *Mass. Coal*, 649 F.2d at 74.

### C.    The Balance of Hardships Overwhelmingly Favors Jack.

The balance of hardships dramatically favors Plaintiffs toward entering the requested injunction prohibiting Kim further posting and ordering him to retract the False Statements. The immediate risk of physical harm to Jack far exceeds any hardship to Kim by posting a retraction. The immediate hardship to Jack is that he must continue living in fear of random physical violence against him based on the threats inspired by Kim's False Statements.

Further hardship to Jack and PCS if Kim is not prohibited from further posting and ordered to post a retraction is immeasurable: their reputations will continue to be damaged, Jack may be rendered unable to attend *any* four-year university, and he may even be rendered unemployable by the pervasive and persistent False Statements that Kim has published and continues to publish about him. The possible hardship to Jack far outweighs any minimal-to-non-existent hardship to

Kim. This third factor overwhelmingly weighs in Jack's favor towards granting the requested injunction. Accordingly, the balance of equities lies strongly in favor of Jack.

### D.     Injunctive Relief Will Promote The Public Interest.

Lastly, injunctive relief in this case will promote the public interest. While the public has a legitimate interest in ensuring that its freedom of speech under the First Amendment is strongly protected, that protection is not boundless and does not extend to defamatory speech. *See McKee v. Cosby*, 874 F.3d 54, 60-61 (1st Cir. 2017); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974). Further, "the right of a man to the protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being—a concept at the root an any decent system of ordered liberty." *Rosenblatt v. Baer*, 383 U.S. 75, 92 (1966) (Stewart, J., concurring).

It is foundational bedrock in this country that every individual is innocent until proven guilty, and the public has a legitimate interest in maintaining that worthy standard. To allow Kim to continue to assert that it is fact that Jack is a guilty rapist and sexual assaulter of women, despite no concrete evidence or proof of that status, weighs against the public's interest. Accordingly, this fourth and final factor weighs in favor of the Court granting a preliminary injunction prohibiting Kim from further posting, or encouraging others to post, about Jack and ordering Kim to retract his false statements about Jack.

## IV.     CONCLUSION

Jack is at risk of substantial irreparable harm and has met the criteria for preliminary injunctive relief. For the aforementioned reasons, Jack respectfully requests that his Motion for Preliminary Injunction be granted, and that this Court issue an order:

(1) enjoining and restraining Kim from creating, publishing, commenting on, or discussing any the False Statements about Jack on any internet social media platform and/or any and all other public or private forum known or unknown to Jack or PCS, including, but not limited to, Twitter, Reddit, and Fizz;

(2) mandating that Kim immediately and permanently post a retraction of the False Statements on any internet social media platform and/or any and all other public or private forum known or unknown to Jack or PCS, including, but not limited to, Twitter, Reddit, and Fizz, including an affirmative statement that Kim is fully aware the False Statements are untrue, fabricated, and were falsely made by Kim to cause harm to and damage the reputation of Jack; and,

(3) following the posting of a permanent retraction of the False Statement as referenced above, mandating that Kim immediately delete and destroy all False Statements on any internet social media platform and/or any and all other public or private forum known or unknown to Jack or PCS, including, but not limited to, Twitter, Reddit, and Fizz.

Respectfully Submitted,

**CULLEN COLLIMORE SHIRLEY PLLC**
Local Counsel

*/s/ Kevin G. Collimore*
KEVIN G. COLLIMORE (NH Bar No. 11259)
37 Technology Way
Suite 3W2
Nashua, NH  03060
Telephone: 603.881.5500
Email: kcollimore@cullencollimore.com

-and-

19

**KOHRMAN JACKSON & KRANTZ LLP**

*/s/ Susan C. Stone*
SUSAN C. STONE (OH 64445) (*pro hac vice pending*)
KRISTINA W. SUPLER (OH 80609) (*pro hac vice pending*)
NATHAN F. STUDENY (OH 77864) (*pro hac vice pending*)
1375 East Ninth Street, 29th Floor
Cleveland, Ohio 44114-1793
Telephone: (216) 696-8700
Facsimile: (216) 621-6536
Email: scs@kjk.com; kws@kjk.com; nfs@kjk.com

*Counsel for Plaintiffs Jack Cocchiarella and*
*Politically Correct Strategies LLC*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that the foregoing *Plaintiff's Motion for Preliminary and Permanent Injunction* was filed electronically on this 16th day of September, 2022. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties not receiving service through the Court's electronic filing system will be served by regular U.S. mail. Parties may access this filing through the Court's system.

**CULLEN COLLIMORE SHIRLEY PLLC**

*/s/ Kevin G. Collimore*
KEVIN G. COLLIMORE (NH Bar No. 11259)
37 Technology Way
Suite 3W2
Nashua, NH  03060
Telephone: 603.881.5500
Email: kcollimore@cullencollimore.com