### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| **JACK COCCHIARELLA**, et al., | ) | CASE NO.: 1:22-CV-00367-SE |
| | ) | |
| Plaintiffs, | ) | JUDGE SAMANTHA ELLIOTT |
| v. | ) | |
| | ) | |
| **NATHAN KIM**, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### PLAINTIFFS' MEMORANDUM IN REPLY TO DEFENDANT'S OBJECTION TO MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION AND BENCH BRIEF PURSUANT TO THE COURT'S REQUEST

Plaintiffs Jack Cocchiarella ("*Jack*") and Politically Correct Strategies LLC ("*PCS*," together with Jack, "*Plaintiffs*") hereby submit their Memorandum in Reply ("*Reply*") to Defendant Nathan Kim's ("*Kim*") Objection to Motion for Preliminary and Permanent Injunction, filed October 3, 2022 ("*Objection*"). For the reasons set forth below, Kim's reliance on Section 230 of the Communications Decency Act of 1996 ("*CDA*") is misplaced and has no applicability to the conduct underlying the claims brought in this case.

Simply put, Kim enjoys no immunity for the original, defamatory content that he widely generated and published to the public at large by way of several social media internet platforms. Further, contrary to Kim's assertion, defamatory statements are not constitutionally protected speech; therefore, injunctive relief prohibiting such statements is not a prior restraint. Accordingly, Plaintiffs respectfully request that this Court grant

Plaintiffs' Motion for Preliminary and Permanent Injunction ("*Plaintiffs' Motion*") and grant the injunctive relief requested therein.

Plaintiffs will address the issues requested by the Court as follows:

- Part II(A) – Section 230 of the CDA Does Not Immunize Kim for His Original Defamatory Posts;

- Part II(B) – Enjoining Kim's Defamatory Posts is Not a Prior Restraint on Constitutionally Protected Speech; and,

- Part II(C) – A Mandatory Injunction Ordering a Retraction Statement is Appropriate.

I. **FACTUAL BACKGROUND**

For the sake of brevity, Plaintiffs incorporate the Complaint and Motion for Preliminary and Permanent Injunction herein in their entirety. (ECF #1; ECF #2). While Plaintiffs seek judgment against Kim, the only thing that will remedy Jack in the court of public opinion and the minds of his college student peers is a retraction by Kim.

As is particularly relevant to this Reply, Kim published the following, original defamatory tweets about Jack: "he's . . . known as a rapist;" "when are you gonna stop raping my classmates;" "it's sad that so many people are supporting a rapist;" "this man has multiple rape allegations against him that have been corroborated by multiple witnesses;" "if you would stop raping my classmates that would be nice;" "please stop raping my classmates;" "maybe people would take you seriously if you stopped raping unconscious girls;" "this guy has been raping my classmates;" and "you raped 6 girls on our campus in

one term." (ECF #1 ¶¶ 47(b), (c), (d), (f), (g), (j)).[1] Additional tweets referenced in the Complaint that may contain screenshots of other tweets or social media posts, are nonetheless accompanied by Kim's own, original defamatory tweets and captions. It remains unclear whether Kim is the original author of the anonymous Librex posts and the direct threats of violence made against Jack under different account names.

Kim did not attribute his original, defamatory publications to any other author, and these defamatory publications are not mere screenshots or retweets of others' publications. In fact, all of these defamatory statements are Kim's original, self-published speech. Finally, all of these posts predate any news article or coverage of the claimed "allegations" against Jack and postdate only the anonymous Librex posts. Kim's roughly-four-page republication of the *NH Journal* article that was published more than eight months *after* Kim's ongoing defamatory statements were published does nothing to further his contention that he is not the original publisher of his own speech. Additionally, and on the same day the *NH Journal* article was published, Kim tweeted that he emailed Columbia University about Jack in an effort to interfere with Jack's acceptance and admittance to Columbia.

II.  **LAW AND ARGUMENT**

   A.  **Section 230 of the CDA Does Not Immunize Kim for His Original Defamatory Posts.**

In his Objection, Kim unsuccessfully attempts to cast his original, self-published tweets as mere republications of others' speech in an effort to argue for immunity under

---

[1] Kim's tweets are cited verbatim and contain various grammatical errors.

Section 230 of the CDA and the First Circuit's interpretation of that statue in *John Doe No. 1 v. Backpage.Com, LLC*, 817 F.3d 12 (1st Cir. 2016). Kim is clearly not Twitter itself, none of his tweets referred to in the Complaint are retweets, and he does not attribute his publications to others. Thus, he is not entitled to immunity under Section 230.

Section 230 only protects from liability (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a State law cause of action, as a publisher or speaker (3) of information provided by another information content provider. *Banaian v. Bascom*, No. 2020-0496, 2022 N.H. LEXIS 53, at *6 (May 11, 2022) (citing *Universal Commun. Sys. v. Lycos, Inc.*, 478 F.3d 413, 418 (1st Cir. 2007)). Kim is concededly a "user of an interactive computer service;" however, because Plaintiffs' State law claims are based on information provided and published by Kim himself and because Kim's posts were not provided by another content provider, he is not entitled to immunity under Section 230.

### 1. The Content Originates Directly from Kim

Kim does not dispute that he published the tweets included in Plaintiffs' Complaint. Rather, he tries to claim that because he brought external knowledge to the keyboard when he typed and published the tweets, he cannot be held liable for the content he directly generated and published to the internet at large, Dartmouth College, and Columbia University. To take such a position would be akin to arguing that undersigned counsel, or Kim's own counsel, was not the author of any of their respective briefs because they rely on legal precedent. Kim's contention that he is not the publisher of his own, original tweets, is beyond absurd and has no legal support.

4

Unlike the defendants in *Banaian*, Kim did not "simply click[] the retweet icon and republish[] someone else's content." *Banaian*, 2022 N.H. LEXIS 53 at *3. Kim generated his own content, published without any reference or attribution to a third party. By enacting Section 230, Congress "chose to immunize all users who repost the content of others. That individual users are immunized from claims of defamation for retweeting content that they did not create is evident from the statutory language." *Id.* at *12. The tweets published by Kim are not retweets of content that he did not create; they are all his original content. Accordingly, Kim is not entitled to immunity under Section 230.

> 2. **Kim, Not Another User, is the Publisher or Speaker of His Own Statements**

In *Backpage*, the case upon which Kim principally relies in his Objection, the First Circuit held that Backpage.Com, LLC, an entity hosting a classified ad service used for sex trafficking, could not be liable for the plaintiffs' sex trafficking claims because Backpage merely hosted the advertisements by which the plaintiffs were trafficked and did not generate the advertisements themselves. *Backpage*, 817 F.3d at 19-20. The *Backpage* plaintiffs acknowledged that the contents of all the relevant advertisements were provided either by their traffickers or by the appellants themselves (under duress). *Id.* at 19. Accordingly, Backpage was immune from liability under Section 230 because it did not generate the advertisements themselves; it merely relayed the content of third parties through its website. *Id.* at 22.

Here, Kim stands in the shoes of the non-party traffickers in *Backpage*, not that of Backpage itself. Kim treats his Section 230 analysis as though he was Twitter itself, merely channeling the content of others through himself. However, Kim's tweets are all his own statements, published to his accounts by him. Because the content was published by and originates directly from Kim and is not attributable to any third party, he cannot be immune under Section 230 of the CDA.

> **B.  Enjoining Kim's Defamatory Posts Would Not Be an Unacceptable Prior Restraint.**

The First Circuit in *Sindi v. El-Moslimany* did not decide the "broad[] question of whether the First Amendment will ever tolerate an injunction as a remedy for defamation." 896 F.3d 1, 30 (1st Cir. 2018). Rather, the *Sindi* court decided to vacate the permanent injunction granted after a trial on the merits of the plaintiff's claims as a prior restraint on speech because the granted injunction could not survive strict scrutiny based on its failure to account for contextual variation related to the six express statements for which it restricted publication. *Id.* at 31. Here, this Court should narrowly tailor the injunction requested by Plaintiffs to account for contextual variation because Plaintiffs are likely to succeed on the merits of their claims, the injunction will preclude any *additional* irreparable harm to Plaintiffs, the balance of hardships favors Plaintiffs, and injunctive relief will promote the public interest because such a narrowly tailored injunction will not be a prior restraint on Kim's speech.

A court may not issue a permanent injunction unless, among other things, "remedies available at law, such as monetary damages, are inadequate to compensate for an irreparable injury," and such an injunction must be "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Id.* at 31. Here, monetary damages are clearly an inadequate remedy to compensate Plaintiffs for the irreparable injury they have suffered and continue to suffer as a result of Kim's defamatory campaign against them. Jack has been rendered unable to connect with any of his peers at Columbia because of the false and defamatory publications initiated and propagated by Kim. Columbia students have directly represented to Jack that they cannot be seen associating with him until he "clears his name." Additionally, Plaintiffs have lost employment opportunities, educational opportunities, and have had their career goals and life's aspirations snuffed out as a result of Kim's defamatory crusade.

A prior restraint may be imposed when the needs of the public order cannot be achieved through less restrictive means; when a prior restraint may be permissible, the decree that embodies it must be precisely tailored to both meet the exigencies of the particular case and avoid censoring protected speech. *Id.* at 32. The party who seeks a remedy in the form of a prior restraint must establish that the evil that would result from the offending publication is both great and certain and cannot be mitigated by less intrusive measures. *Id.*

Here, continued publication of the defamatory statements originally created by Kim will continue to inflict great and certain harm that cannot be mitigated by less intrusive measures. Kim's publications have spurred on a pervasive and widespread internet

7

campaign against Plaintiff, to the point of threats of death and other physical violence against Jack arising and warranting investigation by state and federal law enforcement agencies. Jack was run out of Dartmouth's campus because of Kim's posts and is now unsafe at Columbia because of their continuing nature. Nothing short of preventing Kim from posting further about Plaintiffs and retracting his previous statements will prevent further reputational harm, threats of potential physical harm, and ostracization of Plaintiffs.

Other courts in this Circuit have granted preliminary injunctions restraining future defamatory speech. *See Sensitech Inc. v. LimeStone FZE*, 487 F. Supp. 3d 66 (D. Mass. Sept. 17, 2020) (citing *Sindi*). In *Sensitech*, the U.S. District Court for the District of Massachusetts granted a preliminary injunction restraining the defendants "from posting (or assisting others in posting) on any social media, including but not limited to LinkedIn, Twitter, Instagram, and Facebook, any matters that refer in any way to [plaintiff], [plaintiff's parent company], and/or any of their employees, representatives, affiliates, or agents." *Id.* at 67.

On a motion to dissolve or modify the preliminary injunction, the court modified the injunction to narrowly tailor it by restraining defendants from posting on social media matters that "are clearly false, defamatory or designed to inflict harm on [plaintiff], including statements that represent Limestone as an authorized distributor of [plaintiff]'s products, that imply [plaintiff] is a 'criminal organization' and/or that disclose any confidential information of [plaintiff] or [plaintiff's parent company]." *Id.* at 70. At issue in *Sensitech* was the relationship between two business entities, where the defendant posted on social media that the plaintiff was a "criminal organization" and indicated publicly that it remained an

authorized distributor of the plaintiff's products despite termination of their contractual relationship. *Id.* at 68.

The publications at issue that warranted preliminary injunctive relief in *Sensitech* are significantly less personal and harmful than the publications at issue before this Court. The harm from generally referring to a faceless corporate entity as a "criminal organization" does not come remotely close to the harm inflicted by the utterly intolerable, false, and personal allegations that Jack is a "rapist" who has "raped 8 women" and "rapes unconscious girls." *See Hungerford v. Jones*, 988 F. Supp. 22, 27 (D.N.H. 1997); *Mikell v. Sch. Admin. Unit #33*, 158 N.H. 723, 729, 972 A.2d 1050 (2009). Nor do the supposed harms in *Sensitech* rise to the level of serious danger to the plaintiff's physical well-being, as do the death threats to Jack stemming from Kim's posts.

In *Sindi*, the reviewing court found the injunction at issue problematic because it was not narrowly tailored to allow for contextual variation. *Sindi*, 896 F.3d at 33. There, the court noted that "language that may subject a person to scorn, hatred, ridicule, or contempt in one setting may have a materially different effect in some other setting." *Id.* Undersigned counsel cannot conceive of *any* setting where the statements "Jack is a rapist," "Jack raped 8 women in one term," and "Jack rapes unconscious girls" would not subject Plaintiffs to scorn, hatred, ridicule, or contempt. There is *no* civilized audience that views these statements with *anything but* hatred, scorn, ridicule, or contempt.

It is well within this Court's ability to narrowly tailor an injunction that prevents the certain and ongoing irreparable harm to Plaintiffs and passes constitutional muster. Other

9

courts in this Circuit have done the same by issuing injunctions against publications that do not rise anywhere near the heinous level of the false publications at issue before this Court. Accordingly, because the evil that would result from the further publication of Kim's false and defamatory statements about Plaintiffs is both great and certain and cannot be mitigated by less intrusive measures, the Court should enter the requested injunction against Kim. *See Sensitech*, 487 F. Supp. 3d at 70 (citing *Sindi*, 896 F.3d at 32).

### C. A Mandatory Injunction Ordering a Retraction Statement is Appropriate.

The "right of a man to the protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being." *Rosenblatt v. Baer*, 383 U.S. 75, 86, 15 L.Ed. 2d 597, 86 S. Ct. 669 (1966) (Stewart, J., concurring). Once a defamatory statement has been published, an individual's reputation is restored only if those to whom the defamation was uttered are informed of the statement's falsity. Peled, E., *Constitutionalizing Mandatory Retraction in Defamation Law*, 30 HASTINGS COMM. & ENT. L.J. 33, 86 (2007) (quoting Note, *Vindication of the Reputation of a Public Official*, 80 HARV. L. REV. 1730, 1739 (1967)).

As far as vindication of character or reputation is concerned, it stands to reason that a full and frank retraction of the false charge, especially if published as widely and substantially to the same readers as was the libel, is usually in fact a more complete redress than a judgment for damages. Van Dam, L., *LONG LIVE THE LIE BILL!*, 41 U. MICH. J.L. REFORM 525, 533 (2008) (citing *Allen v. Pioneer-Press Co.*, 40 Minn. 117, 41 N.W. 936, 938 (1889)).

10

In the internet age, a retraction published to Twitter can quickly gain traction and republication to fully and fairly redress the Plaintiffs' injuries.

Plaintiffs here have been made the victim of "cancel culture," or the growing "phenomenon of aggressively targeting individuals or groups, whose views aggressors deem unacceptable in an effort to destroy [those individuals] personally and/or professionally. Cancel culture, a prominent force in today's world, is inconsistent with the philosophy of open, political debate; *it undermines and stifles First Amendment privileges*." *Wis. Family Action v. FEC*, No. 21-C-1373, 2022 U.S. Dist. LEXIS 50595, at *26 (E.D. Wis. Mar. 22, 2022) (emphasis added). By subjecting Plaintiffs to his defamatory crusade, Kim has placed upon them the burden of proving a negative—accordingly, their only chance to restore their reputation, end their social isolation and ostracization, and be able to feel physically safe once more is by this Court granting the requested injunctive relief to order a retraction statement by Kim.

There is "another side to the equation" when balancing the First Amendment with defamation law; the Supreme Court has "regularly acknowledged the important social values which underlie the law of defamation and recognized that society has a pervasive and strong interest in preventing and redressing attacks upon reputation." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 22, 110 S. Ct. 2695, 2707 (1990). Here, money damages will not offer a complete redress for the harm suffered by Plaintiffs. The reputational harm to Plaintiffs and threats of violence and death against Jack's person cannot be fully made up for by a reward of money damages alone, or even by the combination of money damages and an injunction against further publication of false and defamatory statements by Kim. A retraction of the false

11

accusations that "Jack is a rapist," "Jack raped 8 girls on campus," and "Jack rapes unconscious girls" that are published by Kim to Twitter at large is the surest way for Plaintiffs' reputation to be vindicated, especially considering that Kim's tweets are the main original source of the widespread vilification that Plaintiffs now face online and in person.

## III.   CONCLUSION

Plaintiffs have demonstrated a substantial likelihood of success on the merits of their claims, that they have suffered and will continue to suffer irreparable harm absent an injunction, that the balance of hardships overwhelmingly favors Plaintiffs, and that the proposed injunction will promote the public interest. Additionally, Kim is not entitled to any immunity under Section 230 for the content that he created and published himself, nor is Kim's defamatory conduct constitutionally protected speech precluding the injunctive relief requested by Plaintiffs as a prior restraint. Finally, the requested mandatory injunction compelling Kim to retract his false and defamatory statements is necessary for a complete redress of Plaintiffs' harms. For the reasons set forth in the Motion for Preliminary and Permanent Injunction and those further set forth above, the Court must grant Plaintiffs' Motion for Preliminary and Permanent Injunction.

4887-0560-1592, v. 1

Respectfully submitted,

**KOHRMAN JACKSON & KRANTZ LLP**

/s/ Susan C. Stone
SUSAN C. STONE (*admitted pro hac vice*)
KRISTINA W. SUPLER (*admitted pro hac vice*)
NATHAN F. STUDENY (*admitted pro hac vice*)
1375 East Ninth Street, 29th Floor
Cleveland, Ohio 44114-1793
Telephone: (216) 696-8700
Facsimile: (216) 621-6536
Email: scs@kjk.com; kws@kjk.com; nfs@kjk.com

*Counsel for Plaintiffs Jack Cocchiarella and Politically Correct Strategies LLC*

**CULLEN COLLIMORE SHIRLEY PLLC**

/s/ Kevin Collimore
KEVIN G. COLLIMORE (NH Bar No. 11259)
37 Technology Way
Suite 3W2
Nashua, NH 03060
Telephone: 603.881.5500
Email: kcollimore@cullencollimore.com

*Local Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was electronically filed with the Clerk of Courts on October 11, 2022. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s/Susan C. Stone
Susan C. Stone

4887-0560-1592, v. 1